## AFFIDAVIT

I, Eric Brimo, being duly sworn, depose and state as follows:

1.      I am a Special Agent (SA) with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), and have been so employed since February of 2016. Prior to working for the ATF, I was a Special Agent with the U.S. Department of State, Diplomatic Security Service, and a Detective with the Vero Beach Police Department in Vero Beach, Florida. In my capacity as a Special Agent, I am familiar with the federal laws relating to firearms and controlled substance violations, have been trained in the investigation of violations of said laws, and have participated in such investigations. As a Detective with the Vero Beach Police Department, I worked on numerous drug and narcotics investigations, and I am familiar with criminal use, possession, sale, and trafficking of illegal drugs.

2.      I set forth the following as probable cause to believe that Michael Bernier knowingly possessed firearms, while being an unlawful user of or addicted to cocaine base, a Schedule II controlled substance, in violation of Title 18, United States Code, Section 922(g)(3).

3.      This affidavit is based upon my training and experience regarding federal investigations involving firearms and controlled substances, and upon my investigation into the matters described below. Because this affidavit is submitted for the limited purpose of establishing probable cause, I have not set forth each and every fact learned by law enforcement during the course of the investigation. Where I describe a statement, it is described in substance, not verbatim.

### Multiple Sale of Firearms Report

4.      On June 25, 2018 the ATF Burlington Field Office received a copy of a Report of Multiple Sale of Other Disposition of Pistols and Revolvers from R&L Archery, a federal

1

firearms licensee (FFL) located in Barre, VT. FFLs are required to report multiple sales or other dispositions of two or more handguns to the same purchaser if they occur at the same time or within five consecutive business days of each other. I have reviewed the report, which documented that Michael BERNIER purchased two of the same type of make, model and caliber semi-automatic pistols over the course of two days. The firearms purchased were documented as:

- Hi-Point C9 9mm semi-automatic pistol with serial number P10039724 purchased on June 22, 2018; and

- Hi-Point C9 9mm semi-automatic pistol with serial number P10039723 purchased on June 23, 2018.

5.     Based upon my training and experience, I know that a Firearm Transaction Record, or ATF Form 4473, is filled out when an individual purchases a firearm from a FFL. The ATF Form 4473 contains the name, address, date of birth, government-issued photo ID information, National Instant Criminal Background Check System (NICS) background check transaction number, and a series of questions that the purchaser must answer and certify regarding his or her eligibility to purchase firearms under federal law, including a question about whether the purchaser is a user of controlled substances. It also contains the make, model, caliber, and serial number of the firearm(s) being purchased.

6.     I contacted R&L Archery and spoke to an employee who provided the ATF Burlington Field Office with copies of the ATF Forms 4473 from the two purchases on June 22, 2018 and June 23, 2018. According to employees with R&L Archery, the firearms were transferred to BERNIER on those days. I reviewed the ATF Forms 4473 and noted that BERNIER provided his cellular telephone number, which was listed on top of one of the forms. In addition, on Question 11e on the ATF Forms 4473, which asks "Are you an unlawful user of,

or addicted to, marijuana or any depressant, stimulant, narcotic drug or any other controlled substance?" BERNIER checked "No." I also searched the National Crime Information Center (NCIC) database for BERNIER which reflected that BERNIER does not have a criminal history record.

### Interview of BERNIER

7.        Also on June 25, 2018, ATF SA Ben Cohen and I attempted to locate BERNIER to interview him regarding the firearm purchases. I called the telephone number provided on the ATF Form 4473 and an individual who identified himself as "Michael" answered. I asked if BERNIER was available to meet but "Michael" stated he was currently at work. "Michael" advised he would try to see if he could leave work to meet with investigators and would call back. I did not receive a return call from BERNIER that day.

8.        On June 26, 2018, I called BERNIER again at the same cellular telephone number. An individual who confirmed his name was "BERNIER" answered. BERNIER advised he was currently at work and stated that the firearms were stolen from him last night. BERNIER advised that he had taken the two firearms from his residence the day before in anticipation of meeting with investigators, that he stayed at a friend's house, and that the firearms were stolen out of his car. I asked BERNIER if he reported the firearms stolen, and he advised he contacted the Orange County Sheriff's Office but was unsure of what to do. BERNIER stated he would be home at his residence in East Montpelier, VT around noon and was willing to meet with investigators around then. BERNIER provided an address for his residence to investigators.  The address that BERNIER provided me was different than the address listed on the ATF Forms 4473.

3

9.     SA Cohen and myself then traveled to the area of East Montpelier but the address provided by BERNIER was not valid. I contacted BERNIER again and asked him to meet at the East Montpelier Park & Ride, located at 110 VT-14, East Montpelier, VT which he agreed to do.

10.     While enroute to meet with BERNIER, I contacted the Orange County Sheriff's Office who advised neither they, nor the Vermont State Police, had received any reports of stolen firearms from BERNIER.

11.     Upon arrival at the Park & Ride, I observed an individual parking his vehicle and then walking over to SA Cohen and myself. SA Cohen and I exited our vehicle and identified ourselves as Special Agents with the ATF. The individual confirmed his name was "Mike."  I showed "Mike" copies of the ATF Forms 4473 from the two firearm purchases by BERNIER, which "Mike" confirmed were copies of the forms he filled out in his handwriting. BERNIER additionally confirmed he purchased the two Hi-Point pistols listed on the forms. BERNIER then took out two receipts of purchase from his wallet, which had the same serial numbers printed on them as the ATF Forms 4473, and confirmed the serials matched. BERNIER then placed the receipts back in his wallet. I then asked BERNIER to initial and date the copies of the ATF Forms 4473, which he did.

12.     I asked BERNIER about what had transpired with the firearms and BERNIER stated he put the firearms in his car the night before because he was not sure where ATF would meet with him. BERNIER further stated he was staying with a friend in Barre and when he came out to his vehicle in the morning, the firearms were missing. BERNIER advised there was no forced entry to the vehicle but additionally stated his vehicle doors have problems locking. BERNIER stated the firearms were left in their respective boxes on the back seat of the vehicle before being taken from there. Later in the interview in response to further questioning,

BERNIER advised that rather than being taken "yesterday," they had been taken on Saturday, the day that he purchased the second firearm.

13.     I explained to BERNIER the reason ATF was interested in this incident is that the particular make and model firearms he purchased are commonly used by firearm traffickers in the area. BERNIER stated he purchased the two identical guns for him and his girlfriend so each of them would have their own firearm to shoot. BERNIER advised he purchased the first firearm, took it home and showed it to his girlfriend that night, and then offered to get the second one for her because she liked the first one. BERNIER advised he then went to purchase the second firearm the next day. BERNIER stated these were the only two firearms he has ever purchased and stated multiple times that he did not purchase them for anyone else. BERNIER stated he was only able to shoot the firearms once since purchasing them. BERNIER stated he bought one on Friday and one on Saturday and then shot them both at his camp on that Saturday.

14.     SA Cohen then asked BERNIER for consent to search his cellular telephone while speaking with investigators. BERNIER consented and handed his phone over to SA Cohen after unlocking it for him. SA Cohen reviewed text messages on the phone and located several conversations related to drug use, distribution, and manufacturing.

15.     SA Cohen asked BERNIER how long he was using crack cocaine. BERNIER initially stated he used to use crack cocaine but had since gone to rehab and gotten clean. However, after SA Cohen questioned BERNIER about additional text messages related to drug activity that SA Cohen observed on BERNIER's cell phone, BERNIER advised he was now using maybe a half of a gram of crack cocaine daily for the past couple of months. BERNIER also stated he does not sell crack cocaine but if someone was seeking a drug transaction, he would ask around on their behalf.

16.     SA Cohen advised BERNIER that due to the large volume of drug activity on the cellular telephone, ATF would be seizing the telephone as part of the investigation. SA Cohen then requested consent for a full search of the device from BERNIER. I provided BERNIER with an ATF Consent to Search Form, which he reviewed and then signed, granting consent to search the cellular telephone. BERNIER additionally provided the passcode for the device.

17.     SA Cohen and I the concluded the interview with BERNIER who then got in his vehicle and drove away from the location. The cellular telephone was then secured as evidence.

### Digital Media Device Examination

18.     I transported BERNIER's cellular telephone to the ATF Burlington Field Office and provided it to SA Matt Ekstrom, who conducted a digital forensic examination of the cellular telephone. The data from the examination was submitted to evidence. SA Ekstrom provided me with a copy of the data recovered from the cellular telephone during the examination.

19.     I reviewed the data from the device, which includes text messages sent and received by BERNIER related to drugs and firearms. For example, there is a received text message dated April 27, 2018 from a contact (Contact 1) that states "Will said this about wanting a gun: Any hand gun bring me one today an i will give you guys 6 halfs." Based on my training and experience I know "half" to refer a half of a gram of crack cocaine. On April 30, 2018, BERNIER sends a text message to Contact 1 that states "I'm trying let me see what I have for a gun. Will he still trade for it. Take off what u owe him."

20.     I reviewed a series of text messages dated June 9, 2018 with a different contact (Contact 2). The series of text messages includes a message from Contact 2 that states "What would be the best u can do on a 8 ball?" A follow-up text message from Contact 2 states "I got it cash anyway whenever u can come by? I need'u to show me really ow to cook it I fucked it all

6

up." BERNIER replies "Ok bud." Contact 2 replies "When u thinking?" and BERNIER writes

back "Soon bud." Based on my training and experience I know an "8 ball" to be a common term

for one eighth of an ounce of cocaine and that to "cook" related to cocaine refers to the process

of taking powder cocaine and turning it into crack cocaine.

21.    In addition, I reviewed a text message conversation with Contact 1 dated June 14,

2018 which includes the following exchange:

- BERNIER – "I feel like shit hunni I'm sorry"

- Contact 1 – "Sick? Stomach bug?"

- Contact 1 – "Or withdrawal"

- BERNIER – "Yes"

- Contact 1 – "Stomach bug"

- BERNIER – "No my stupid habit"

- Contact 1 – "Oh well hopefully you can get some ad feel better"

I know based on my training and experience that individuals who use and are addicted to certain

drugs, including crack cocaine, can exhibit physical symptoms such as fatigue, nausea, or other

medical issues when they stop using drugs. Drug users commonly refer to this phenomenon as

"withdrawal" or being "sick." Drug users frequently try to avoid experiencing this by obtaining

additional drugs to continue their usage. In addition, I know that drug users commonly refer to

their drug use as their "habit" when describing it to others.

22.    I reviewed another text message exchange dated June 21, 2018 with a different

contact (Contact 3). In that exchange, BERNIER sends a message to Contact 3 that states "Yo u

need any work today?" Contact 3 replies "I'm trying ole boy," then replies "Got someone who

wants a small but wants to see it first." BERNIER replies "Like a half or g?" Contact 3 replies

"Half," to which BERNIER replies "Ok." Based on my training and experience I know "work" to refer to either crack cocaine or heroin, a "half" to refer a half of a gram of crack cocaine, and a "g" to refer to a gram of crack cocaine.

## Interstate Nexus Determination

23.     On June 27, 2018, I spoke with ATF SA Scott Murray, a designated ATF Interstate Nexus Expert. SA Murray advised that the two Hi-Point Model C9 9mm semi-automatic pistols purchased by BERNIER were manufactured outside of the State of Vermont. As such, because of the two firearms' presence in Vermont, they must have travelled from out of state, impacting interstate commerce.

## Controlled Substances

24.     Based upon my training and experience, I know that cocaine base, commonly referred to as crack cocaine, is categorized as a Schedule II Controlled Substance.

## Conclusion

25.     Based on the information set forth above, I submit there is probable cause that on or about June 23, 2018, in the District of Vermont, Michael Bernier, while being an unlawful user of or addicted to cocaine base, a Schedule II controlled substance, knowingly possessed in and affecting interstate commerce firearms, that is, a Hi-Point C9 9mm semi-automatic pistol with serial number P10039724, and a Hi-Point C9 9mm semi-automatic pistol with serial number P10039723, in violation of Title 18, United States Code, Section 922(g)(3).

Dated at Burlington, in the District of Vermont, this __7ᵗʰ__ day of August, 2018.

Eric Brimo
Special Agent, ATF

Sworn to and subscribed before me this __7ᵗʰ__ day of August, 2018.

John M. Conroy
United States Magistrate Judge